IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ANGELA E. HARRIS                                                                                         PLAINTIFF

v.                                           CASE NO.         2:11-CV-02023

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                              DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I. Procedural Background

The plaintiff filed her applications for SSI on May 2, 2007 (T. 173), alleging an onset date of December 19, 2006 (T. 220), due to plaintiff's panic attacks and anxiety (Id.).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was initially held on September 9, 2008 (T. 36-57) and the ALJ issued a decision on April 2, 2009 denying benefits. (T. 98-105).  On September 9, 2009 the Appeals Council reversed the decision and remanded for a rehearing (T. 106-107). Another hearing was held on March 18, 2010 (T. 58-92) and the ALJ again issued a decision denying

benefits on August 6, 2010 (T. 10-18).  Plaintiff was present and represented by counsel.  On December 27, 2010,  the Appeals Council denied the review of the ALJ's findings.

At the time of the second administrative hearing, plaintiff was 29 years of age and possessed an 8th grade education.  The Plaintiff had no past relevant work ("PRW") experience. (T. 17 ).

On August 6, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's generalized anxiety disorder and borderline intellectual functioning did not meet or equal any Appendix 1 listing.  T. 12.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:  The claimant is marginally educated and would be limited to unskilled work involving simple one to two step tasks, and she is further limited to no transactional interaction with the public. (T. 14).  With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of kitchen helper, industrial cleaner, and bus person. (T. 17-18).

## II.  Applicable Law

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id*.  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the

decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and

work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion

#### A.  Listed Impairment

The Plaintiff contends that the evidence shows that she met the criteria for the listed impairment under Section 12.05 (C) which deals with Mental Retardation.

The regulations define mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" before age 22.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05

Section 12.05 (C) provides that mental retardation is sufficiently severe to constitute a listed disability when the claimant has: (1) "[a] valid verbal, performance, or full scale IQ of 60 through 70," and (2) "a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

The ALJ found that 12.05 (C) was not met because the Plaintiff "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (T. 14). It is difficult to tell from the ALJ's opinion, but it appears that a major element of the case rest upon the proper determination of the Plaintiff's IQ.

If the ALJ determined her IQ to be 70 or less then the second step of the evaluation process would have required her to determine if the Plaintiff had "a physical or other mental impairment imposing additional and significant work-related limitation of function."

The ALJ stated that "Dr. Walz has diagnosed the claimant with a moderate major

depressive disorder and generalized anxiety disorder **but assessed limitations do not preclude unskilled work**".

This would not have been the proper evaluation if the Plaintiff's IQ was 70 or less. If a claimant's IQ is 70 or less the second part of 12.05 (C) states that the Plaintiff must have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." A physical or other mental impairment is sufficient to satisfy the second part of this test when such impairment "has a 'more than slight or minimal' effect on [the claimant's] ability to perform work." *Sird v. Chater*, 105 F.3d 401, 403 (8th Cir.1997) (*quoting Cook v. Bowen*, 797 F.2d 687, 690 (8th Cir.1986)); *Buckner v. Apfel,* 213 F.3d 1006, 1011 (C.A.8 (Ark.),2000).

The ALJ made no determination on whether the Plaintiff's other mental impairments had more than a slight or minimal effect on the Plaintiff's ability to do work and the record seems to indicate that the Plaintiff's other mental impairments did have more than a minimal effect.

Dr. Walz opined that the Plaintiff was Moderately impaired in her ability to understand and remember "simple" instructions; make judgments on "simple" and "complex" work-related decisions; and that she was Marked impaired in her ability to understand and remember and carry out complex work-related decisions. (T. 342). Dr. Walz also noted that the Plaintiff's ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in the routine work setting was impaired. (T. 343). She felt that this impairment was Extreme in her ability to interact with the public and Marked in her ability to interact with supervisors and co-workers. (T. 343).

There does not appear to be anything in the record to show that the Plaintiff's other

impairments did not have a minimal effect on her ability to do work, therefore, the ALJ comments can only be rationalized if in fact she made a determination that the Plaintiff's IQ was greater than 70.

An IQ test is useful in determining whether an applicant has a mental impairment, but other information in the record which indicates the individual's ability to function can be used to discredit the lone IQ score. See id. § 12.00(D); *see also Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir.1995)(other evidence in record can be examined to discredit IQ indicative of mild mental retardation).

Dr. Walz administered a WAIS-III test to the Plaintiff on November 6, 2008 and her results were a Verbal IQ of 67, a Performance IQ of 62 and a Full Scale IQ of 62 (T. 338). Where more than one I.Q. is customarily derived from the test administered, that is, where verbal, nonverbal, and full-scale I.Q.'s are determined as with the Wechsler Adult Intelligence Scale (the test used here), the lowest of the I.Q.'s should be used in applying the Social Security regulations. *See Smith v. Heckler*, 735 F.2d 312, 317 n. 2 (8th Cir.1984); 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00(B)(4) (1985). *Webber v. Secretary, Health & Human Services,* 784 F.2d 293, 298 (C.A.8 (Ark.),1986).

Dr. Walz was concerned with the validity of the test because the Plaintiff showed "poor effort" on the CARB test (T. 338) and on the MMPI-2 (T. 340). As a result Dr. Walz stated that the Plaintiff's "true level of functioning **is thought to be** in the 65-75 range in terms of IQ. Dr. Walz went on to state that given the Plaintiff "malingering on the CARB, I can't rely on her test performance to address intellectual functioning but based on vocabulary, educational history, and pathognomonic errors on the neuropsychological test, I feel she function **at best** in the borderline

range. (Id.). Her diagnosis was Probable Borderline Intellectual Functioning. (T. 341)

A person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning. *See, e.g., Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir.1985) (absent contrary evidence, an IQ test taken after the insured period correctly reflects claimant's IQ during the insured period); *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir.1986) (claimant had low IQ during onset of disability in 1979 rather than just when first IQ tested in 1982); *Luckey v. Department of Health & Human Servs.*, 890 F.2d 666, 668-69 (4th Cir.1989) (ALJ may assume claimant's IQ remained relatively constant in absence of evidence showing a change in claimant's intelligence functioning); *Holmes v. Apfel*, 1999 WL 731769, *5 (N.D.Ill.1999) (IQ score presumptively reflects person's IQ throughout life, no matter how old the person was when test first administered); *Ouellette v. Apfel*, 2000 WL 1771122, *3 (D.Me.2000) (absent contrary evidence, "a person's IQ and/or the condition of mental retardation is presumed to have been approximately constant throughout his/her life"). *See also Sird v. Chater*, 105 F.3d 401, 402 n. 4 (8th Cir.1997).

The Plaintiff stated to Dr. Walz that she was in special education all through school and "made straight F's. (T. 335). The only school record in the file is her 9th grade report which does document that the Plaintiff received straight F's (T. 270) at that time. The Plaintiff also acknowledge that she had seen Dr. Chambers in the past for "panitk attiks" and "siver enzity" and that she suffered from "deprishon". The ALJ found that the Plaintiff had not engaged in substantial gainful employment since 2007 but a review of her wage records does not ever show the Plaintiff to be gainfully employed. (T. 177-214).

**B. Development of the Record:**

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). The determination in this case by the ALJ that the Plaintiff's IQ was above 70 is crucial. There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45.

Development of the record by the ALJ is essential because an administrative hearing is not an adversarial proceeding. *Hepp v. Astrue*, 511 F. 3d 798 , 804 (8th Cir. 2008). Moreover, "[a]n adequate hearing is indispensable because a reviewing court may consider only the Secretary's final decision [and] the evidence in the administrative transcript on which the decision was based." *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir.1992) (per curiam); Battles v. Shalala 36 F.3d 43, 44 -45 (C.A.8 (Ark.),1994). "Unfairness or prejudice resulting from an incomplete record-whether because of lack of counsel or lack of diligence on the ALJ's part-requires a remand." *Highfill v. Bowen*, 832 F.2d 112, 115 (8th Cir.1987) (evidence "put the ALJ on notice of the need for further inquiry").

In this case the IQ test results clearly establish an IQ below 70 but the test results are in dispute and as a result Dr. Walz was only able to diagnose the Plaintiff with Probable Borderline Intellectual Functioning (T. 341) but she made it clear that the Plaintiff was **at best** in that range.

The duty to more fully develop the record may include seeking clarification if a crucial issue is undeveloped or underdeveloped.  *Smith v. Barnhart*  435 F.3d 926, 930 (C.A.8 (Ark.),2006) citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir.2004).  The crucial issue in this case is the proper determination of the Plaintiff's I.Q.

The Court believe Remand is necessary to allow additional testing of the Plaintiff's I.Q. and to secure a RFC assessment made after that determination if necessary.

### IV.  Conclusion

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this February 28, 2012.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE